### THE CALIFORNIAN.

(District Court, E. D. New York. June 25, 1903.)

1. SHIPPING—LIABILITY OF SHIP FOR INJURY OF SEAMAN—NEGLIGENCE.

Libelant, a seaman, after being ashore on his own business in the evening when the ship was in port, returning about 11 o'clock, while passing in the dark over some coal which had been stowed in a passageway on deck of which he had knowledge, was injured by the slipping of the coal under his feet, which caused him to fall. *Held*, that the ship

was not liable for the injury, being under no duty to keep the deck lighted at that hour of the night for the benefit of members of the crew who were not on duty.

In Admiralty. Suit by seaman to recover damages for personal injury.

Campbell & Hance, for libelant.
Convers & Kirlin, for claimants.

THOMAS, District Judge. On June 12, 1900, the libelant engaged as cook on the steamship Californian, which was taking coal and cargo at her dock in New York. On the evening of that day he went ashore for his own purposes, returned at about 11 o'clock, and went up on the bridge deck. Before the libelant went ashore coal had been stowed in the passageway on the bridge deck, and over this the libelant was obliged to walk. The coal was held in place at either end by two temporary bulkheads, about three feet high, and when the libelant attempted to step from the coal to enter to his quarters the coal slid under his foot, and he was carried forward and down so violently as to produce a rupture. On the following morning he had some pain, but made no complaint until the ship was at sea. Thereafter the captain was advised of his infirmity. The ship went to San Francisco, where the libelant visited a surgeon at the hospital, who advised him to have an operation performed; but the captain dissuaded him from it, and the surgeon later concurred in the captain's wish. He arrived in New York in January. He did his own and sometimes extra work during the voyage, and, after securing several employments, in October submitted to an operation which resulted in a practical cure. The dock was covered, and inside were electric lights, some 20 feet high, which could shine through the large door, if the same were open, and, as the bridge deck was approximately 8 feet above the dock, the tide being low, the light would be sufficient. The libelant states that the light did not reach the coal, and that it was totally dark at that place, and in this he is corroborated by the companion who was with him. The probable fact is that the libelant walked over the coal without serious difficulty, and that when he came to the end the coal yielded under the pressure of his foot, and he was injured as stated. The question is whether the ship was negligent in leaving the only entrance for the libelant in such condition, in view of his opportunity to see, that he might be hurt by the coal giving way at its extreme limit.

The inquiry whether the door on the dock was open so as to allow the electric light to come to the passageway need not be determined. It was not the duty of the master to keep the ship lighted for him at that hour of the night, and had it been so lighted it does not appear that he would have avoided injury from the coal yielding under the pressure of his foot. The evidence plainly shows that the men knew that they were at the point where they were to step off from the coal on to the deck, and some of them did it in safety. The libelant's foot slid on the coal. It is possible that a good light would have enabled him to adjust his foot with reference to the coal so that it would not yield under him. But it is quite questionable. It is pre-

ferred, however, to put the decision distinctly upon the ground that it was not the duty of the master to furnish the libelant, returning at a late hour at night, with a light that would enable him to make a better adjustment of his foot to the condition of the coal. The ship was obliged to furnish a light to the libelant while he was engaged in the performance of his master's duty, but not to light him to his quarters after he had spent the evening, to a late hour, ashore for his own pleasure or convenience. The evidence tends to show that until half past 11 o'clock on that night work was proceeding on the vessel in No. 2 and No. 3 holds. In that case there were electric lights both forward and aft of the place where the accident happened, and it would be inferable also that the door of the dock was open. If, however, such was not the case, if everybody had retired for the night, if the lights upon the vessel used for working were extinguished, and if the door leading into the dock was closed, it was past the time when the master was obliged to illumine passageways for the safe adjustment of the feet of belated sailors to the coal which was necessarily stored upon the deck. In such case, if the libelant found that all work was at an end and lights extinguished, and the door to the dock closed, and that the way was dark and dangerous, he was at liberty to call the watchman to open the door.

It seems that the libelant was called upon to do very hard work through the voyage; that he not only did his own work, but extra work; and that he was constrained to remain with the ship when he desired to go to the hospital as advised by the hospital surgeon; and that the attention that he received upon the vessel was not adapted to his case. It is probable that the captain did as well as the circumstances permitted while the man was on shipboard, but he did not receive necessary treatment, and was induced not to seek it at San Francisco. The claimants are under a strong moral obligation to make compensation for this added suffering of a faithful sailor.

The libel is dismissed, without costs.